

**SO ORDERED.**

**SIGNED this 11 day of June, 2007.**

```
                                    _____
                                         JAMES D. WALKER, JR.
                                    UNITED STATES BANKRUPTCY JUDGE
```
_____


UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | CASE NO. 07-10112-JDW |
| DONALD E. BERGER and, | ) | |
| KAREN L. BERGER, | ) | |
| | ) | |
| DEBTORS. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

| | |
|---|---|
| For Debtors: | George W. Woodall<br>Post Office Box 305<br>Albany, Georgia 31702-0305 |
| For American Express: | Thomas W. Joyce<br>Post Office Box 6437<br>Macon, Georgia 31208-6437 |

**MEMORANDUM OPINION**

This matter comes before the Court on American Express Centurion Bank's objection to plan confirmation.  This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L).  After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

Debtors Donald and Karen Berger filed a Chapter 13 petition on February 2, 2007.  Their Statement of Current Monthly Income ("CMI"), which is Form B22C, shows a monthly gross income of $8,069.15, which exceeds the median income in Georgia for their household size of four people.  Such debtors are commonly referred to as above-median-income debtors.  Based on the calculations in Form B22C, Debtors have disposable income of $341.02.  Their Schedules I and J show monthly income of $5,857.22 and monthly expenses of $4,219.96, leaving excess monthly income of $1,637.26.  Debtors' proposed Chapter 13 plan provides for 60 monthly payments to the trustee–$450 per month for the first 18 months, and $630 per month for the remainder of the plan.  The increase in payments coincides with Debtors' satisfaction of a 401(k) loan.  No further increase is proposed when a second 401(k) loan is satisfied later during the term of the plan.

American Express Centurion Bank is an unsecured creditor with claims of more than $21,000.  American Express filed an objection to confirmation of Debtors' plan on the ground that it fails to propose payment of all Debtors' disposable income to unsecured creditors.  The

parties submitted briefs on the issue. After considering the facts and the arguments of the parties, the Court will overrule the objection for the reasons that follow.

**Conclusions of Law**

OVERVIEW

American Express's objection is based on § 1325(b) of the Bankruptcy Code, which provides as follows:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1).

Debtors' plan provides for less than full payment of unsecured claims. Therefore, in light of American Express's objection, the Court may not confirm the plan unless it provides Debtors will pay all their projected disposable income into the plan. The parties dispute the meaning of "projected disposable income."

Prior to the 2005 Bankruptcy Code amendments,[1] § 1325(b)(2) defined disposable income as all income not reasonably necessary for the debtor's support. If a creditor objected to confirmation, courts generally relied on the income and expenses debtors reported on Schedules I

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

3

and J to determine disposable income. In re Miller, 361 B.R. 224, 226 (Bankr. N.D. Ala. 2007). "Determining whether the debtor's reported Schedule J expenses were reasonably necessary for the support of the debtor or a dependant of the debtor was a fact-bound undertaking that required the court to make judgments about a debtor's lifestyle." Id.

The 2005 amendments changed the definition of disposable income to "current monthly income received by the debtor [other than certain child support payments] less amounts reasonably necessary to be expended– (A)(I) for the maintenance or support of the debtor or a dependent of the debtor," for domestic support obligations, for qualified charitable contributions, and for business expenses. 11 U.S.C. § 1325(b)(2). The amendments further defined "current monthly income" as the debtor's average income from all sources (except Social Security payments or payments for being a victim of war crimes or terrorism) for the six months prior to filing bankruptcy. Id. § 101(10A). Finally, the amendments provided a formula for determining the amount of expenses "reasonably necessary" for the debtor's support. Id. § 1325(b)(3). For an above-median-income debtor, such expenses "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2) [the means test]." Id. Under the means test, most of an above-median-income debtor's expenses are calculated by reference to IRS national and local standards, rather than his actual costs. However, special circumstances may justify additional expenses or modification of current monthly income. Id. § 707(b)(2)(B)(I).[2] Chapter

---

[2] The definition in § 1325(b)(3) of "amounts reasonably necessary" for the support or maintenance of the debtor in calculating disposable income specifically references § 707(b)(2)(B). Miller, 361 B.R. at 235 ("Under § 707(b)(2)(B), the court may consider special circumstances that make 'such expenses or adjustments to income necessary and reasonable.'"); see also In re Kolb, No. 06-32036, 2007 WL 960135, at *6 (Bankr. S.D. Ohio March 30, 2007). Special circumstances warranting adjustment of income or expenses may include a serious health problem or active military duty. 11 U.S.C. § 707(b)(2)(B)(i).

13 debtors make the disposable income calculation by completing Form B22C, which they are required to file pursuant to Bankruptcy Rule 1007(b)(6).  In this case, Form B22C shows Debtors have a disposable income of $341.02, while Schedules I and J indicate a net income of $1,637.26.

The parties take different positions on the interpretation of "projected disposable income" in light of the amendments.  American Express argues the Court may look beyond Form B22C to determine Debtors' projected disposable income.  According to its position, the term "projected disposable income" has a different meaning than "disposable income."  "Disposable income" requires a historical inquiry into the debtor's income and subtraction of expenses based on IRS standards.  "Projected disposable income to be received," on the other hand, requires a prospective inquiry and should take into account actual income and expenses.  Therefore, American Express urges the Court to consider Debtors' income and expenses as detailed on Schedules I and J in deciding whether Debtors propose to pay all their projected disposable income into the Chapter 13 plan.

Debtors argue that in the absence of a reasonable expectation of a substantial change in circumstances, the disposable income as calculated on Form B22C is controlling.  Because Debtors anticipate no substantial change in their income or expenses, they contend their monthly plan payments need not exceed $341.02.

Bankruptcy courts are closely split as to the proper means for calculating projected disposable income of an above-median-income debtor.  A growing minority of cases holds the amount computed on Form B22C is determinative.  In re Miller, 361 B.R. 224 (Bankr. N.D. Ala. 2007); In re Brady, No. 06-18922, 2007 WL 549359 (Bankr. D.N.J. Feb. 13, 2007); In re Kolb,

5

No. 06-32036, 2007 WL 960135 (Bankr. S.D. Ohio March 30, 2007); In re Naslund, 359 B.R. 781 (Bankr. D. Mont. 2006); In re Barr, 341 B.R. 181 (Bankr. M.D.N.C. 2006); In re Alexander, 344 B.R. 742 (Bankr. E.D.N.C. 2006); In re Farrar-Johnson, 353 B.R. 224 (Bankr. N.D. Ill. 2006) (only considering the relevance of Schedule J).  The majority holds the court may consider Schedules I and J, although the cases offer varying opinions about the amount of weight given to the schedules.  In re Grant, No. 06-32299, 2007 WL 858805 (Bankr. E.D. Tenn. March 19, 2007); In re LaPlana, No. 6:05 BK 17635, 2007 WL 431627 (Bankr. M.D. Fla. Feb. 9, 2007); In re Clemons, No. 05-85163, 2006 Bankr. Lexis 1366 (Bankr. N.D. Ga. June 1, 2006); In re Grady, 343 B.R. 747 (Bankr. N.D. Ga. 2006); In re Watson, No. 06-11948, 2007 WL 1086582 (Bankr. D. Md. April 11, 2007).

PRINCIPLES OF STATUTORY INTERPRETATION

When interpreting the meaning of "projected disposable income," the Court must begin with the text of the statute.  Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030 (2004).  If the statute is clear on its face, the Court must enforce the plain meaning unless doing so would lead to an absurd result or a result demonstrably at odds with congressional intent.[3] U.S. v. Ron Pair Enter., Inc., 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989).  The mere presence of ungrammatical language will not render the statue ambiguous.  Lamie, 540 U.S. at

---

[3] As one court has noted, the scanty legislative history of BAPCPA has limited value as a tool of interpretation due to the lack of a conference committee report or similar report representing the full membership of Congress.  Kolb, 2007 WL 960135, at *4.  The only available report, the House Judiciary Report "'represents only a view of members of one committee of one house of the federal bicameral legislature'" and does little more than paraphrase or recite the statutory text.  Id. (quoting In re Sorrell, 359 B.R. 167, 176 (Bankr. S.D. Ohio 2007)).  The report "'often contains a mere recitation of the eventually enacted statutory text and adds little, if any, assistance to the court's efforts in determining Congress's intent.'"  Id. (quoting Sorrell, 359 B.R. at 176).

534, 124 S. Ct. at 1030.  Furthermore, harsh results are not necessarily absurd.  Id. at 538, 124 S. Ct. at 1032.  "The fact that Congress may not have foreseen all the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning."  Union Bank v. Wolas, 502 U.S. 151, 158, 112 S. Ct. 527, 531 (1991).

LEGAL ANALYSIS

Beginning with the text of the statute, Congress has provided a specific definition of "disposable income" with regard to above-median-income debtors that refers to the means test in § 707(b)(2).  A primary element of the majority's reasoning is "projected disposable income" has a meaning separate and distinct from "disposable income"–it is forward-looking rather than historic.  Grady, 343 B.R. at 750-51; La Plana, 2007 WL 431627, at *5.  To conclude otherwise, they reason, would render the word "projected" superfluous.  In re Jass, 340 B.R. 411, 415-16 (Bankr. D. Utah 2006).

However, the majority's interpretation renders not just one word superfluous, but the entirety of subsection 1325(b)(2), which states, "disposable income" is defined "[f]or purposes of this subsection [§ 1325(b)]...."  The only other reference to "disposable income" in that subsection is in the phrase "projected disposable income."  Thus, if the definition does not apply to "projected disposable income" it has no application at all.  Kolb, 2007 WL 960135, at *9-10.

Another provision of the Code lends support to the view that "projected disposable income" must be defined by reference to the means test for an above-median-income debtor.  Section 1129(a)(15) provides that when an unsecured creditor objects to an individual debtor's Chapter 11 plan, the debtor must pay all unsecured claims in full or make distributions valued at "not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to

be received" during the plan. 11 U.S.C. § 1129(a)(15)(B) (emphasis added). In this provision Congress expressly states the definition of "projected disposable income" is controlled by the definition of "disposable income."

In addition, the most relevant dictionary definition of the verb "project" is "[t]o calculate, estimate, or predict (something in the future), based on present data or trends: *projecting next year's expenses*." The American Heritage Dictionary of the English Language, 4th ed., (2004) (emphasis in original). Thus, according to the ordinary meaning of "project," the Court should look at existing data and extrapolate it over the term of the plan. In this respect, "applying historical data such as CMI to future months is no less 'future-oriented' than applying the more recent income and expenses from a debtor's schedules." Kolb, 2007 WL 960135, at *8 n.17. Prior to the amendments, courts extrapolated projected disposable income from information in Schedules I and J. Under the amendments, Congress has directed the Court to extrapolate from a different source–disposable income as calculated in accordance with the means test and reported on Form B22C. See Brady, 2007 WL 549359, at *5. As one court noted, "The use of 'shall' in section 1325(b)(3) [with regard to applying the means test] is mandatory and leaves no discretion with respect to the expenses and deductions that are to be deducted in arriving at disposable income." Barr, 341 B.R. at 185.

Another point raised by the majority for the proposition that courts may look outside Form B22C to determine projected disposable income is the inclusion of the phrase "to be received" in § 1325(b)(1)(B). The majority reasons the phrase indicates Congress's intent to require plan payments based on the debtor's actual future disposable income, rather than the figure that results from application of the statutory formula. Kolb, 2007 WL 960135, at *10

8

n.19. At least one court in the minority, however, has read the phrase in a different manner.

> [T]he fact that the phrase ["to be received"] is "forward-looking" is not inconsistent with the court's analysis. The phrase simply refers to the payments that will be received throughout the life of the plan. ... At worst, the phrase could be viewed as figurative, a loose and inartful expression that the current monthly income belongs to or is attributable to the debtor.

Id. (internal citations omitted).

From a policy perspective, rigid application of the disposable income formula can lead to seemingly inequitable results. This case offers a good example. Debtors' actual funds available to pay unsecured creditors exceeds the Form B22C amount by more than $1,000 per month. Thus, the unsecured creditors are shortchanged and Debtors receive a windfall. In different circumstances, if a debtor's income drops dramatically or his expenses increase substantially post-petition, his plan may be unconfirmable pursuant to § 1325(a)(6) because he cannot feasibly pay the amount dictated by the formula. Nevertheless, the formula "represents, by the definition's plain language, the policy judgment of Congress of how [projected disposable] income should be determined in the context of chapter 13 after BAPCPA." Kolb, 2007 WL 960135, at *6; see also Brady, 2007 WL 549359, at *6 ("Congress' chosen method of determining the debtors' disposable income must be respected.").

While the results of applying the formula may be troubling in some cases, they are not absurd and do not justify deviating from the plain language of the statute. The Eleventh Circuit Court of Appeals recently cautioned courts against crossing into congressional territory by attempting to "fix" or "improve" statutes. Bracewell v. Kelley (In re Bracewell), 454 F.3d 1234, 1246 (11th Cir. 2006). It is for Congress to decide whether the inequities produced by

application of a strict formula are preferable to the inequities that may result from a judge's use of discretion after considering all the facts. As one court explained, Congress has provided "detailed and inflexible" definitions

> particularly as to expenses and deductions for above-median-income debtors. As to such debtors, it appears that Congress intended to adopt a specific test to be rigidly applied rather than a standard to be applied according to the facts and circumstances of the case. Calculating "disposable income" for above-median-income debtors ... is now separated from a review of Schedules I and J and no longer turns on the court's determination of what expenses are reasonably necessary for the debtor's support.

Barr, 341 B.R. at 185.

## CONCLUSION

For the foregoing reasons, the Court holds the plain language of § 1325(b) requires an above-median-income debtor's projected disposable income to be determined in accordance with current monthly income minus expenses set forth in the means test in § 707(b). In other words, Debtors' are not obligated to pay more than the disposable income calculated on Form B22C. This applies regardless of any known changes in Debtors' expenses, such as satisfaction of their two 401(k) loans.[4] Because Debtors' plan proposes monthly payments exceeding their disposable income, American Express's objection to confirmation will be overruled.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT

---

[4] Section 707(b)(2)(A)(iii) requires payment of secured claims to be calculated over a 60 month period, even if they will be satisfied in less time. Therefore, Debtors' projected disposable income takes into account full payment of their 401(k) loans, and additional adjustments need not be made once the loans are satisfied. See Brady, 2007 WL 549359, at *8.